469 P.2d 844

Simon J. DAVIS and Arlie S. Davis, doing business as Davis Brothers, Appellants,

v.

FARMERS PUMP COMPANY, Inc., an Arizona Corporation, and V. W. Owens, Appellees.

No. 2 CA–CIV 704.

Court of Appeals of Arizona, Division 2.

May 28, 1970.

Rehearing Denied June 30, 1970.
Review Denied Sept. 22, 1970.

Anderson, Welker & Flake, by Dudley S. Welker, Safford, for appellants.

Johnson, Darrow, Hayes & Morales, by J. Mercer Johnson, Tucson, for appellees.

KRUCKER, Judge.

The Davis Brothers owned 160 acres of farming land near Willcox, Arizona. In 1964 they had a well drilled to 1,400 feet. Thereafter, they hired Farmers Pump Company to test the new well as per a written

memorandum admitted into evidence dated April 17, 1964. The substance of this original agreement, and this is confirmed by the defendant, is that Farmers Pump was to well test Davis' new well for an estimated $375. (They were actually billed $653, Invoice No. 8143.) Farmers moved onto the land and commenced testing in May. The soil conditions in the well, however, prevented conclusive testing because back-flushing had to be used to keep debris from entering the pump and no continuous pumping could be achieved. When the test equipment was finally pulled up, the tail pipe or suction was gone, apparently lost in the well.

When the owner of the pump company, Mr. Owens, heard of this he told the Davises he would send someone over to pull out the suction. Mr. George Webb arrived and worked a month. He contacted the pipe numerous times, but was unable to remove it. Mr. Webb's labor was never originally intended to be charged to plaintiffs, as defendant testified, because Owens felt then he should see that the pipe was removed. The total bills for this month's work were $1,809, for three invoices, Nos. 9544, 9545, and 9547. None of this expense was contemplated by the testing agreement, nor did a later written agreement specifically cover it retroactively.

Finally, as June arrived and irrigation needs arose, the Davis Brothers and Owens agreed to postpone the search and set up the well for the irrigation season, and then return and start the search again after the harvest. To fix their agreement, the parties entered into a written agreement which, in part,[1] reads:

"Farmers Pump Co Inc. agrees to pull customers pump 200 ft of 8″ and reset same. As well as pay for time to drill up or remove 10 ft. of 10″ Tail Pipe.

Davis Bros. agree pay for liner to go to Bottom of well and clean out to the suction and from suction to bottom as well as running liner and set up and tear down time on clean out rig.

Should Suction move down with clean out Davis Bros pay only for time taken prorata to clean out to the suction. Set up and tear down not to exceed $100.00."

Immediately thereafter, in June, several bills were incurred in pulling and setting a pump over the well to use for the summer's irrigation. It ran at just under 900 gallons a minute. Mr. Owens, the pump company owner, testified as to this oral agreement, although the formal agreement says nothing about it, as he admits. The costs were billed to the Davis Brothers in the amount of $988, invoices Nos. 8156, 8179, 8137, 8195, and 8295.

Finally, at the end of the season, in October, Mr. Earl Lohn rendered his services for 1,200 feet of lining, for cleaning the well, and for searching for the pipe in order to remove it. The entire bill was then submitted to the plaintiffs in the amount of $6,030.22, invoices Nos. 9093, 9077, 9548, 9553, and 9456. Mr. Owens was asked why he did not delete that portion of the charges attributable to removing the pipe. He replied there were no such charges because the pipe was never found and no drilling out of the pipe occurred. Davis Brothers did pay $300, invoice No. 9206, to this account for the liners as agreed to in the agreement.

When all the work was done, Farmers Pump submitted a bill to Davis Brothers for all of the work done, having determined its share of the cost, i. e., drilling up the tail pipe, never came into play because the pipe was never found. Davis Brothers then sued defendants Farmers Pump and its owner, Mr. Owens, in tort and contract. Defendants counterclaimed for labor, materials, and attorney's fees under their written agreement. The trial court, sitting without a jury, awarded $2,500 in attorney's fees. It also reviewed the evidence and awarded defendants their counterclaim, minus $574.70 worth of expenses which

---

1. The agreement also contains a printed portion which provides for attorney's fees; and other costs of collection.

Mr. Owens admitted had been double charged, making an award of $8,605.51 plus interest. A "letter of findings" signed by the judge on May 20, 1968, acknowledge these specific amounts in reducing the damages owed. The Webb job was cut by $128 for time tickets 3353 (incorrectly cited in the letter as 3343) and 3385 on invoice No. 9545. The Lohn job was cut by $546.70 from invoices Nos. 9456 and 9548. Plaintiffs appeal from these determinations and a denial of their motion for a new trial.

The following issues are raised on appeal:

(1) Can a party recover in quantum meruit for items outside their express agreement?

(2) Can quantum meruit be allowed where no benefit resulted?

(3) Can attorney's fees under a written agreement be recovered when the agreement is breached?

(4) Can *res ipsa loquitur* be applied to prove negligent contract performance?

We believe the essential question in this appeal revolves around whether the damages awarded by the trial court were supported by law and sufficient evidence.

Taking the facts in a light most favorable to sustaining the trial court, the following conclusions have been reached.

■ First, since the court awarded attorney's fees, which can be awarded only if so agreed in writing, the court must have upheld the written agreement. Second, the court, in construing that agreement by awarding all of defendants' bills, must have agreed with defendants' interpretation of Paragraph One that it had no obligation to share costs until the tail pipe was found. Since Mr. Lohn did not find it, plaintiffs had to bear the entire costs he incurred. In short, the court held plaintiffs to any exploratory costs.

Thirdly, the court must have found plaintiffs agreed orally, subsequent to this agreement, to have Farmers Pump set up temporary pumping facilities to last the summer. Mr. Owens so testified. Ultimately, the court must have concluded all the fees proffered were reasonable in amount.

The court must also have concluded that the parties agreed to pay for the original pump testing and that the $653 bill was reasonable.

■ As to all of these determinations, we believe the court could so find on the basis of the evidence presented. However, we have been unable to justify the court's allowing Farmers Pump to charge plaintiffs for Mr. Webb's bills. Mr. Webb worked the month prior to the June agreement, and its terms cannot be related back to include his work. Even Mr. Owens admitted at trial that at the time, he never intended Mr. Webb's costs to be billed to plaintiffs and we do not see how the court can so hold. The original testing agreement surely did not so contemplate, nor does Mr. Owens suggest, nor could there be any suggestion that Mr. Webb's work bestowed a benefit on the Davises requiring restitution. Mr. Owens testified that he sent Mr. Webb out as soon as he heard his men had left the pipe below, and we believe he assumed responsibility for the cost. The judgment should be reduced as to the Webb billing, taking into account the amount it was already reduced for double billing, to wit, $1,809 minus $128, or $1,681 total.

■ As to the plaintiffs' complaint in negligence, they allege error in failure of the court to find negligence based on *res ipsa loquitur*. We believe there was sufficient evidence for the trial court to deny plaintiffs' recovery either because no damage was proven or because the tail pipe was not the proximate cause of whatever decrease in gallonage there was. The doctrine of *res ipsa loquitur* is simply a rule of circumstantial evidence and plaintiff must still prove negligence with all its elements. McKeever v. Phoenix Jewish Community Center, 92 Ariz. 121, 374 P.2d 875 (1962);

Stewart v. Crystal Coca-Cola Bottling Co., 50 Ariz. 60, 68 P.2d 952 (1937).

Judgment affirmed in part; reversed in part.

HOWARD, C. J., and HATHAWAY, J., concur.